**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-00307-WJM-CBS

TIG GLOBAL, LLC, a Delaware limited liability company,

    Plaintiff,

v.

PC SPECIALISTS, INC., a California corporation,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS**

---

This matter is before the Court on Defendant PC Specialists, Inc.'s ("PCS's") Motion to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 7-8), and PCS's second Motion to Dismiss (ECF No. 22-23). Both motions are fully briefed. (*See also* ECF No. 10, 11, 29.) After Plaintiff TIG Global, LLC ("TIG Global") filed a supplemental complaint under Federal Rule of Civil Procedure 15(d) (ECF No. 34; *see also* ECF No. 33), PCS filed a Supplemental Brief in support of its motions to dismiss or stay (ECF No. 37). TIG Global filed a Response to that brief (ECF No. 38), and PCS filed a Reply (ECF No. 39). For the following reasons, PCS's motions to dismiss or stay are DENIED.

## I.  BACKGROUND

This action resuscitates a previous trademark infringement lawsuit between PCS and TIG Global regarding TIG Global's use of the mark TIG GLOBAL. In resolving this previous lawsuit, the parties in 2007 entered into a Trademark Assignment and License

Agreement ("License"), under which PCS licensed to TIG Global use of the TIG GLOBAL trademark.

On December 31, 2009, MICROS Systems, Inc. ("MICROS") acquired TIG Global through a stock purchase agreement. That same day, MICROS sent a letter to PCS stating, *inter alia*,

> MICROS intends to have TIG Global continue to use the 'TIG Global' trademark and trade name after the acquisition.
>
> To the extent required under the [License], MICROS consents to be bound by the applicable terms of the [License], and will cause TIG Global to continue to comply with the [License]. MICROS disputes, however, that it is a 'direct competitor' of PES in any meaningful sense of the phrase.[1] However, out of an abundance of caution, MICROS nevertheless requests PCS's consent to the continuation of the [License] after the acquisition is effective.

MICROS then allegedly used the TIG GLOBAL mark in a January 6, 2010 press release, and began using the mark on MICROS's website. On January 11, 2010, PCS sued MICROS for trademark infringement in the United States District Court for the Southern District of California. (S.D. Cal. Case No. 10-cv-00078-JLS-WVG.) That litigation is ongoing.

On January 13, 2010, PCS's counsel sent TIG Global a letter stating, *inter alia*,

> We have been instructed by our client [PCS] to effect the termination of the . . . License. Therefore, pursuant to the Section 12 of the [License], we hereby terminate the License effective immediately, pursuant to its terms.
>
> . . . [The License allows TIG Global to assign the License] only in the event that TIG Global, LLC's business is sold to a company which is not a direct competitor of PCS. MICROS is a direct competitor of PCS in several of its markets. As such, the License does not permit assignment

---

[1] The License prohibited TIG Global from assigning the License to a "direct competitor" of PCS.

> to MICROS.  The purported attempt to assign the [L]icense is therefore void and constitutes a breach of the License.
>
> Since MICROS, a direct competitor of PCS, has acquired TIG Global, LLC in violation of the License, there can be no cure of this breach and any mediation would be futile.  Therefore, please comply with Section 12 of the License and discontinue any use of the TIG GLOBAL mark . . . .
>
> We look forward to your immediate confirmation that TIG Global, LLC is promptly complying with this termination request . . . .

On February 12, 2010, TIG Global filed this action against PCS.  The Complaint brought three claims: declaratory judgment, breach of contract, and breach of good faith and fair dealing.  The declaratory judgment claim sought a declaration that (1) the acquisition of TIG Global by MICROS did not constitute an assignment of the License to MICROS; (2) MICROS is not a direct competitor of PCS; (3) the License is still in effect and TIG Global continues to have the right to use the TIG GLOBAL mark, and (4) PCS's attempted termination of the License via the January 13, 2010 letter violated the termination provisions in Section 12 of the License.[2]  The claims for breach of contract and breach of good faith and fair dealing were based on PCS's alleged breach of the License by attempting to terminate the License without complying with the termination provisions in Section 12 of the License.

In PCS's original Motion to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 7-8), PCS argues that the Court lacks subject matter jurisdiction over the action, and the action should therefore be dismissed (under Fed. R. Civ. P. 12(b)(1) and 9

---

[2] Section 12 of the License provides that, in the event that TIG Global breaches the License, PCS must take the following steps prior to being able to terminate the License:  (1) provide written notice to TIG Global specifically identifying the basis for the alleged breach and identifying steps to cure the alleged breach, then (2) enter into mediation of the dispute, and then (3) provide TIG Global up to 180 days to cure the alleged breach following the mediation.

U.S.C. § 1 *et seq.*), because TIG Global filed this action in violation of the mandatory dispute resolution provision at Section 12.3 of the License. In the alternative, PCS asks the Court to stay proceedings pending completion of mediation.

In response, TIG Global argues that Section 12.3 of the License only constitutes a non-binding mediation clause. TIG Global also argues that Section 12.3 does not apply to this dispute, and instead only applies to an attempt by PCS to terminate the License. Finally, TIG Global argues that PCS is estopped from complaining about TIG Global's failure to demand mediation prior to filing this lawsuit, because PCS's January 13, 2010 letter to TIG Global stated that mediation would be futile.

On May 6, 2010, United States Magistrate Judge Craig B. Shaffer held a scheduling conference with the parties, at which he suggested that PCS send a new letter to TIG Global stating it is withdrawing and rescinding its January 13, 2010 letter. (ECF No. 15.) Magistrate Judge Shaffer suggested that, following receipt of that new letter, TIG Global should dismiss this lawsuit without prejudice. (*Id.*)

On May 17, 2010, PCS sent TIG Global another letter. The letter did not rescind PCS's January 13, 2010 letter, but instead supplemented it. (ECF No. 23, Ex. 1, at 1 ("[W]e write to clarify and supplement the January 13, 2010 letter . . . ."); *id.* at 2 ("PCS supplements and renews the prior notice of defaults . . . ."). In summary, the letter explained in more detail why PCS believed that TIG Global was in breach of the License, listed options for TIG Global to cure the breach, and continued to suggest that mediation would not be productive.

On August 16, 2010, PCS filed a second motion to dismiss (ECF No. 22-23), arguing that its May 17, 2010 letter mooted the original complaint because the new

letter complied with the termination requirements of Section 12 of the License. In response, TIG Global disputed whether the May 17, 2010 letter complied with the provisions of Section 12 of the License. TIG Global also argued that, nevertheless, its original complaint contained other claims not relevant to PCS's compliance *vel non* with Section 12 of the License, namely, its claim for a declaratory judgment that MICROS's acquisition of TIG Global did not violate the terms of the License.

At this time TIG Global was in the process of seeking leave to amend its complaint. On September 21, 2010, Magistrate Judge Shaffer granted TIG Global's request, but held that the amended complaint would be treated as a supplemental pleading under Federal Rule of Civil Procedure 15(d), that PCS would not need to re-file its motions to dismiss, and that the parties could file supplemental briefing on the motions to dismiss. (ECF No. 33.)

TIG Global's First Amended Complaint brought the same claims as the original complaint, alleging that PCS's January 13, 2010 and May 17, 2010 letters failed to comply with the termination provisions of Section 12 of the License, and that, for several reasons, the acquisition by MICROS of TIG Global did not breach the terms of the License. (ECF No. 34.)

In PCS's supplemental brief in support of its motions to dismiss, PCS reiterated its arguments that TIG Global breached the mandatory arbitration provision in the License by filing this action rather than demanding that the parties mediate the dispute, and that PCS's May 17, 2010 letter mooted TIG Global's claims. In the brief, PCS also argued that TIG Global has not suffered any damages in the action. In TIG Global's Response and PCS's Reply, the parties argued regarding the effect of the litigation

pending in the Southern District of California, focusing on whether PCS has taken inconsistent positions in the two actions and whether this action should be dismissed given that the action in California was filed first.

## II.  LEGAL STANDARD

PCS's pending motions to dismiss are brought under Federal Rule of Civil Procedure 12(b)(1), which provides that a party may move to dismiss a claim for relief in a pleading for lack of subject-matter jurisdiction.  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (citation and quotation marks omitted).  When, as here, "a party attacks the factual basis for subject matter jurisdiction, the court may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts."  *SK Finance SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997).  "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances."  *Id.*  "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

## III.  ANALYSIS

As an initial matter, it should be noted that TIG Global has alleged in both its

original complaint and supplemental complaint that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (diversity jurisdiction).  In the Scheduling Order in this action, which was approved by PCS, PCS responded to these jurisdictional allegations by stating that it "does not deny the presence of subject matter jurisdiction" (but then goes on to argue that it reserves its right to challenge venue in this Court).  (ECF No. 20.)  Also, at no point in PCS's briefing on its motions to dismiss has it called into question the existence of diversity jurisdiction, and the Court finds no basis to do so.  The Court now proceeds to analyze the arguments that PCS does make in its motions to dismiss or stay.

      PCS's original motion to dismiss or stay argued that the action should be dismissed, or alternatively stayed, because TIG Global filed this action in contravention of the mandatory mediation provision in the License.  PCS argues that the Federal Arbitration Act applies here, and requires that the Court stay the action pending arbitration.  9 U.S.C. § 3 provides,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

PCS also argues the Court has discretion to go farther, as other courts have done, by dismissing this action for failure to comply with the License's mandatory arbitration provision.

      The Court disagrees that the mediation provision in the License required TIG Global to mediate this dispute prior to filing suit.  The mediation provision is located at

7

Section 12.3 of the License. Section 12 of the License, generally, describes the circumstances in which the Licensee (TIG Global) will be deemed to have breached the License, and the steps that the Licensor (PCS) must follow prior to being able to terminate the License due to such breaches. Section 12.3 of the License requires that the parties mediate a dispute based on such a breach by TIG Global prior to PCS being able to terminate the License. As such, Section 12.3 does not apply to the situation here, namely, PCS's alleged breach of the License by terminating the License without complying with Section 12's termination provisions. Because Section 12.3 does not apply here, neither does 9 U.S.C. § 3. On this basis, the Court denies PCS's original Motion to Dismiss or, in the Alternative, Stay Proceedings. (ECF No. 7.)[3]

PCS's second motion to dismiss argued that the action is moot because PCS's May 17, 2010 letter to TIG Global complied with Section 12 of the License, thereby rectifying any deficiencies in the January 13, 2010 letter. This argument fails for two reasons. First, notably, the courtroom minutes for the scheduling conference held before Magistrate Judge Shaffer indicates that Magistrate Judge Shaffer directed PCS to send a new letter "stating they are withdrawing and rescinding their letter of January 13, 2010, without prejudice to PCS's rights to properly invoke the provisions in Section 12 of the Agreement." Instead of rescinding the January 13, 2010 letter, PCS's May 17, 2010 letter merely supplemented the letter, further explaining why PCS believed TIG

---

[3] This is not to say that the Court approves of TIG Global's failure to attempt to mediate this dispute prior to filing this action. This is also not to say that the Court approves of PCS's failure to attempt to mediate the related dispute with MICROS prior to filing suit in the Southern District of California. The question is whether TIG Global filed this action in breach of Section 12.3 of the License. The Court holds that it did not.

Global to be in breach of the License, and that mediation would not be productive. Therefore, the May 17, 2010 letter did not effectively alter the force and effect of the January 13, 2010 letter, and therefore did not moot this action.  Second, and more importantly, this action is not based solely on TIG Global's claims that PCS breached the License by terminating the License prior to completing the steps required by Section 12 of the License.  Instead, TIG Global also seeks declaratory relief that its acquisition by MICROS did not violate the terms of the License.  Specifically, TIG Global seeks a declaration that its acquisition by MICROS did not constitute an assignment of the License, and, even if it did, that the assignment did not violate the License because MICROS is not a "direct competitor" of PCS.  Particularly given PCS's termination of the License via its January 13, 2010 letter, the Court has jurisdiction over these claims for declaratory relief.  *See* 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-37 (2007).

Finally, PCS argues, for the first time in its supplemental brief, that the action should be dismissed because "Plaintiff asserts no damages other than attorneys' fees." The Court rejects this argument for two reasons.  First, PCS failed to raise the argument in either of its motions to dismiss the original complaint.  Given that the original complaint contained the virtually identical "Request for Relief" section to that of the supplemental complaint, there is no legitimate basis for PCS to have waited until its supplemental brief to make this argument.  *See Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1242 (D. Colo. 2010) ("[B]y failing to raise this argument in its original motion, [defendant] has waived it.").  And second, TIG Global's original complaint and supplemental complaint contain a sufficient claim of damages.  *See*

9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (quotation marks and brackets omitted). PCS's argument that the action should be dismissed for lack of injury is based on its claims that "Plaintiff has continued to use the disputed trademarks through this dispute" and that TIG Global's "recent disclosures" indicate that its claim for damages only consists of attorney's fees. These are evidentiary matters properly considered on a motion for summary judgment, not on motions to dismiss the complaints in this action. *See id.*

The Court is troubled by the excessive litigiousness and posturing of the parties in this action.[4] One would think the parties might have learned something from their

---

[4] To provide one example (while emphasizing that both parties are guilty of such litigiousness and posturing), PCS's January 13, 2010 letter to TIG Global **terminated** the License and stated that mediation would be "futile," but PCS now turns around and complains that TIG Global filed suit without attempting to mediate the dispute. In its Reply to the original motion to dismiss, PCS stated that, through this letter, "it is clear that PCS was simply opening negotiations with TIG Global and urging it to respond and to provide a reason to proceed with mediation." If that is actually what PCS intended by its letter, then the letter constituted grandstanding at its extreme, grandstanding that interferes with efficient and inexpensive dispute resolution. Then, PCS's May 17, 2010 letter stated, *inter alia*, that "the current circumstances continue to cause concern that mediation would not be a fruitful use of the partes' energies and resources." Excessive filings to this Court have not been a fruitful use of the parties' energies and resources; the parties should turn their attention to working towards an out-of-court resolution to this dispute. The May 17, 2010 letter also stated, "we will not object to a request by TIG Global to mediate." This statement, along with counsel's representation that PCS's January 13, 2010 letter was designed to urge TIG Global to "provide a reason to proceed with mediation," is dumbfounding and bordering on childish. The Court does not care which party calls the other first in order to initiate mediation, but the Court implores some party to grow up and make that call.

For future purposes, the undersigned would also like to direct the parties and their counsel to carefully read the undersigned's Revised Practice Standards, available on the Court website, and specifically Section III.D.1 and III.E.1. Going forward, any filing in this action that fails to comply with District of Colorado Local Rules or the undersigned's Practice Standards will

previous experiences litigating against each other over this trademark, namely, the importance of promptly reaching an out-of-court settlement to this action and the action in the Southern District of California, rather than continuing to needlessly expend attorney's fees and court resources. Given the nature of the disputes in the two actions, it appears that the question is not *whether* the parties will reach an out-of-court resolution to this action and the action in the Southern District of California, but *when* they will do so. The Court strongly encourages the parties to promptly begin attempts to reach an out-of-court settlement of the two actions.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. Defendant's Motion to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 7) is DENIED; and

2. Defendant's second Motion to Dismiss (ECF No. 22) is DENIED.

Dated this 3rd day of November, 2011.

BY THE COURT:

William J. Martínez
United States District Judge

---

be stricken.